Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Telephone: 353 87 742 4444

*Plaintiff Pro Se*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARK MAHON, AN INDIVIDUAL,

            Plaintiff,

      v.

ENTERTAINMENT ONE US LP.;
ENTERTAINMENT ONE UK LIMITED.;
APPLE INC.; APPLE INC. D/B/A ITUNES
STORE; GOOGLE LLC.; GOOGLE LLC.
D/B/A GOOGLE PLAY; YOUTUBE LLC.;
AND DOES 1 - 18,

           Defendants.

CASE NO. 4:21-cv-08562-HSG

**COMPLAINT FOR:**

1. Infringement of Right of the Author in Violation of 17 U.S.C. § 106;

2. Interference with Plaintiff's Rights in Violation of the Berne Convention Implementation Act of 1988;

3. Fraud;

4. Civil Conspiracy;

5. Negligent Infliction of Emotional Distress;

6. Intentional Infliction of Emotional Distress.

**DEMAND FOR JURY TRIAL**

DECLARATION OF MARK MAHON;

EXHIBITS 1- 63

## REDACTED VERSION OF DOCUMENT

COMPLAINT

Plaintiff, Mark Mahon, alleges as follows:

**JURISDICTION**

1.      This is a civil action seeking damages for Infringement of Right of the Author under the Copyright Act of the United States, 17 U.S.C. §§ 101, *et seq.* pursuant to The Berne Convention Implementation Act of 1988; Interference with Plaintiff's Rights in Violation of the Berne Convention Implementation Act of 1988; Fraud, Civil Conspiracy, Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress under State law.

2.      The Court has original subject matter jurisdiction over the Infringement of Right of the Author claims in accordance with the Berne Convention Implementation Act of 1988 pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court also has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 under diversity of citizenship and pursuant to 28 U.S.C. § 1350 for interference with Plaintiff's rights in violation of the *Berne Convention for the Protection of Literary and Artistic Works* (1886, and all revisions, amendments thereto), which the court has jurisdiction over pursuant to the Berne Convention Implementation Act of 1988 ("BCIA").

4.      This Court has further supplemental jurisdiction over Plaintiff's related State law claims pursuant to 28 U.S.C. § 1367. Plaintiff's State law claims arise from the same common nucleus of operative facts as the underlying federal claims. Resolving all State and federal claims in a single action serves the interests of judicial economy and convenience to all parties.

5.      This Court has additional supplemental jurisdiction as Plaintiff also seeks the full protection of this Court pursuant to Article 2(6) *Obligation to protect*, which guarantees that works shall enjoy protection in all countries of the Union; and pursuant to Article 5(1) *Rights Guaranteed* of the *Berne Convention for the Protection of Literary and Artistic Works* ("Berne Convention"), which guarantees authors shall enjoy, in all countries of the Union other than the country of origin, the rights and protections which their respective laws grant to their nationals, as well as the rights specially granted by the Berne Convention. Furthermore, the United States of America and the Republic of Ireland are signatories and contracting parties of the Berne Convention; and the United States of America guarantees protection through the BCIA.

- 1 -

**VENUE**

6.      This Court has personal jurisdiction over Defendants because, among other things, acts of infringement of right of the author complained of herein originally occurred in the State of California, and in the United States. Defendants also used infringing masters, counterfeit / illicit elements and infringing electronic metadata, which they were in receipt of from California directly and indirectly, which were also provided to companies headquartered in the District via distribution agreements conducted through the United States that Defendants profited from; and companies in the District directly or indirectly used electronic metadata digital master copies that violated the right of the author. Companies headquartered in the District were also provided with a counterfeit cover, label and/or packaging and a counterfeit trailer. Venue is also proper pursuant to 28 U.S.C. § 1332 under diversity of citizenship, as Plaintiff is an Irish citizen and resident of the Republic of Ireland.

**THE PARTIES**

7.      Plaintiff, Mark Mahon, ("Plaintiff") is an Irish Film and Television Academy award nominated independent filmmaker based in Cork, Ireland, whose creative work and books have been featured and sold throughout the world. Plaintiff wrote, produced, financed and directed the motion picture at the centre of this dispute by using his life-savings to pursue his chosen career of making motion pictures.

8.      Defendant Entertainment One US LP. (hereinafter "eOne US") is, on information and belief, organized and incorporated under the laws of the State of Delaware and a company that does business under the banner of Entertainment One globally, which provides entertainment services. The company distributes films, television series, family shows and music for other Entertainment One Companies around the world, and also focuses on Digital Asset Management through management and exploitation of Digital Assets for the other eOne Companies. Entertainment One U.S. LP also serves customers worldwide. Entertainment One US LP is wholly owned by Earl Street Capital Inc., which is wholly owned by Entertainment One Holdings USA Inc., which is wholly owned by Entertainment One UK Holdings Limited, which is wholly owned by Hasbro, Inc.

- 2 -

9.     Defendant Entertainment One UK Limited (hereinafter "eOne UK") is, on information and belief, wholly owned by Entertainment One UK Holdings Limited, which is wholly owned by Hasbro, Inc. The company is primarily involved in the acquisition, distribution, and production of feature films, music and television series. Entertainment One UK Limited previously operated under E1 Entertainment UK Ltd. until it changed its name on or around September 1, 2010. Entertainment One UK Limited is organized under the laws of the United Kingdom. Entertainment One U.S. LP. and Entertainment One UK Limited are hereinafter collectively referred to as "Entertainment One".

10.     Defendant Apple Inc. (hereinafter "Apple Inc.") is, on information and belief, an American multinational technology company headquartered in Cupertino, California, that designs, develops, and sells consumer electronics, computer software and online services.

11.     Defendant Apple Inc. d/b/a  iTunes Store (hereinafter "iTunes Store") is, on information and belief, a software-based online digital media store operated by Apple Inc. through the United States that opened on April 28, 2003, as result of Steve Jobs' push to open a digital marketplace. The digital media store is operated by Apple Inc. from the iTunes digital platform. The iTunes Store is available on most Apple devices, including the Mac, the iPhone, the iPad, the iPad touch, and the Apple TV, as well as on Windows (inside iTunes). Apple Inc. and Apple Inc. d/b/a iTunes Store are hereinafter collectively referred to as "Apple".

12.     Defendant Google LLC (hereinafter "Google LLC") is on information and belief, headquartered at Mountain View, California and the owner of YouTube LLC, as Google LLC bought the site in November 2006 for U.S.$1.65 billion according to public record. Google LLC is an American multinational technology company that specializes in internet-related services and products, which include online advertising technologies, search engine, cloud computing, software, and hardware. It is considered one of the Big Four technology companies, alongside Amazon, Apple, and Facebook.

13.     Defendant Google LLC. d/b/a Google Play (hereinafter "Google Play") is, on information and belief, a digital distribution service operated at Mountain View, California and developed by Google LLC. It serves as the official app store for the Android operating system,

- 3 -

allowing users to browse and download applications developed with the Android software development kit (SDK) and published through Google. Google Play also serves as a digital media store, offering music, books, movies, and television programs. Google's digital distribution services included in Google Play are Google Play Books, Google Play Games, Google Play Movies & TV and Google Play Music.

14.     Defendant YouTube LLC. (hereinafter "YouTube") is, on information and belief, an American video-sharing platform headquartered in San Bruno, California. YouTube allows users to upload, view and share videos. YouTube now operates as one of Google LLC's subsidiaries. It offers a wide variety of user-generated and corporate media videos. Available content includes video clips, TV show clips, music videos, short and documentary films, movie trailers, live streams, and other content such as video blogging, short original videos, and educational videos. Most content on YouTube is uploaded by individuals. The vast majority of its videos are free to view, but there are exceptions, including subscription-based premium channels, film rentals, as well as YouTube Music and YouTube Premium. Google LLC.; Google LLC d/b/a Google Play and YouTube LLC are hereinafter collectively referred to as "Google".

15.     The true names and capacities of the defendants named herein as DOES 1 through 18, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff is informed and believes, an thereon alleges, that each of the defendants designated herein as DOE is legally responsible for the events and happenings hereinafter alleged and legally caused injury and damages proximately thereby to Plaintiff as alleged herein. Plaintiff will seek leave to amend the Complaint when the true names and capacities of said DOE defendants have been ascertained. Entertainment One US LP., Entertainment One UK Limited.; Apple Inc.; Apple Inc. d/b/a iTunes Store; Google LLC.; Google LLC d/b/a Google Play; YouTube LLC and DOES 1 through 18 are hereinafter collectively referred to as "Defendants".

16.     Plaintiff is informed, believes and has proof, and on that basis avers, that each of the Defendants participated in or benefitted from and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

17.     Each Defendant is sued individually and Plaintiff is informed, believes and has proof, and on that basis avers, that each of the Defendants and DOES 1 – 18 has acted in concert and participation with each other concerning the claims in this Complaint.

18.     Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants and DOES 1 – 18 was empowered to act as the agent, servant and/or employees of each other, and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of them.

## BACKGROUND AND FACTUAL ALLEGATIONS

19.     At all times relevant hereto, Plaintiff has been and still is the holder of the Exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments thereto) (the "Copyright Act") to produce, copy, reproduce, distribute, display, sell, import, export, publicly perform, or license the reproduction, to make and/or reproduce derivative works including but not limited to the cover/label/packaging and trailer, of his award-winning motion picture (referred to herein as "STRENGTH AND HONO[U]R"), trailer and award-winning cover[1] attached as Exhibit 1[2] hereto throughout the world, which is the subject of this action. *See also* Declaration of Mark Mahon ("Decl.Mahon") ¶ 4.)

20.     Plaintiff is an entrepreneur who has used his experience, talent, and creativity developed over years of hard work to pursue his goal of making motion pictures. Plaintiff, Mark Mahon wrote, produced, financed, directed, authored and branded his award-winning motion picture, 'STRENGTH AND HONOUR' (the "Motion Picture" or "Film") starring Michael Madsen (Reservoir Dogs, Kill Bill, Die Another Day, Donnie Brasco, Free Willy), Vinnie Jones

---

[1] Case no. 4:20-cv-01527-YGR named as defendants Entertainment One U.S. LP; Entertainment One UK Limited; Entertainment One Licensing US, Inc.; and Entertainment One Limited. On April 8, 2021, the Court found that it lacked personal jurisdiction and dismissed Plaintiff's claims presented with prejudice. (Case no. 4:20-cv-01527-YGR; Order Dkt. No. 77.) However, Plaintiff did not know at the time that a party could *lawfully* license Plaintiff's Film and metadata to another, which was being used without Plaintiff's consent in the first place. However, under the *Licenses* provision of Entertainment One's agreements with technology companies headquartered in the District, Entertainment One had granted permission to these companies directly or indirectly to reformat, host, store, reproduce, copy, distribute etc. Plaintiff's copyright protected Film and metadata on servers owned and controlled by these companies, which could plausibly implicate Entertainment One.
[2] Plaintiff filed the Complaint on November 3, 2021. (Dkt. No. 1.) Plaintiff made some corrections to the Complaint thereafter but before being served on Defendants. Accordingly, Plaintiff will serve both versions and Exhibits 1 through 63 on Defendants.

(Snatch, X-Men: The Last Stand) and Richard Chamberlain (The Towering Inferno, The Count of Monte-Cristo, The Thorn Birds, Shogun) by depleting his life savings and personally borrowing money from his family and friends. (Exhibit 2 attached hereto; Decl.Mahon ¶ 5.)

21.     The Film follows the struggle of a single father who has to break his dying wife's last wish to never box again in order to save his young son's life; Plaintiff also spent over two years travelling around the world on the international film festival circuit with his main actors to create a branding for the Film. (Exhibit 3 attached hereto; Decl.Mahon ¶ 6.) It received two Irish Film and Television Academy award nominations (Exhibit 3 at 1), was nominated for over thirty (32) awards around the globe and won over twenty (20) awards in film festivals all over the world. (Exhibit 1 attached hereto.) Plaintiff's success created such strong word of mouth about the Film at the end of the film festival campaigning, Plaintiff was hosted to a Royal screening by His Serene Highness, Prince Albert, Sovereign Prince of Monaco at the Palace of Monaco. (Exhibit 4 attached hereto; Decl.Mahon ¶ 7.) Plaintiff, Mark Mahon and the Motion Pictures' leading actor, Michael Madsen, were also invited on the TODAY show in New York to talk about 'STRENGTH AND HONOUR' by Meredith Vieira. (Exhibit 5 attached hereto; Decl.Mahon ¶ 8.)

22.     Plaintiff is the registered author and copyright owner of the screenplay having registration no.TXul-289-556 at the United States Copyright Office (Exhibit 6 attached hereto; Decl.Mahon ¶ 9);  the legal and beneficial owner of the Motion Pictures' copyright having registration no. PA 1-642-297 at the U.S. Copyright Office (Exhibit 7 attached hereto; Decl.Mahon ¶ 10) and the registered author, writer, producer, feature director and owner of the exclusive rights of the Motion Pictures' copyright having registration no. PA 1-398-376 at the U.S. Copyright Office. (Exhibit 2 attached hereto.)

23.     Plaintiff assigned his rights in trust to 'Maron Pictures Ltd., t/a Maron Pictures Limited Liability Company and Maron Pictures' ("Maron Pictures") (Exhibit 8 attached hereto; Decl.Mahon ¶ 11) and then formally under an 'Agreement to Acquire Literary Material' (Exhibit 9 attached hereto; Decl.Mahon ¶ 12) and 'Agreement to Acquire Authorship Rights' on September 25th, 2006. (Exhibit 10 attached hereto; Decl.Mahon ¶ 13.) These agreements, in combination with each other, were to pay Plaintiff  €300,000.00 (Three Hundred Thousand Euro)

or approximately U.S.$351,000.00  no later than the 30th day of September, 2015, in order for his grant of rights to become permanently assigned. In the event of non-payment, Plaintiff had the right to **revoke all rights**  granted to Maron Pictures. (Exhibit 9 at 6, 7; Exhibit 10 at 4, 5 ; Exhibit 11 attached hereto; Decl.Mahon ¶ 14.)

24.     However, Plaintiff  **never** "waive[d] his benefit of any provision of law known as the "droit moral" or moral rights or any similar law in any country of the world" (Exhibit 10 at 5) and the only branded, award-winning display cover/label that was ever legally authorized by Plaintiff contains the Motion Pictures' leading actor, Michael Madsen, in the main body of the poster, as per the *Screen & Advertising Statement of Restrictions* ("Advertising Restrictions"), which calls for the Film to "be referred to, as an Irish film" too. (*Exhibit* 12 attached hereto; Decl.Mahon ¶ 15.) It also displayed awards won from film festivals around the world, listed two Irish Film and Television Academy award nominations and two quotes branding the Film as the award-winning motion picture it is. The text and awards also represents the same colors as the Irish flag, the tricolor. (Exhibit 1 attached hereto.) The branded cover/label Plaintiff only ever legally authorized also adhered to contractual credit obligations.

25.     In or around April 2009, Maron Pictures then **only** assigned "the sole and exclusive right, license and privilege to license to distribute" under a 'Grant of Rights' or the sales/distribution right for the fully finished, branded Film pursuant to 17 U.S.C. § 106(3) to Mainsail LLC[3] ("Mainsail") for "the entire world, excluding North America and Ireland" in accordance with 17 U.S.C. § 201(d). (Exhibit 13 attached hereto; Decl.Mahon ¶ 16.) Mainsail also does business under the banner of Shoreline Entertainment, Inc. ("Shoreline"). However, Maron Pictures never transferred its rights pursuant to 17 U.S.C. §§ 106 (1), 106 (2), 106(4), 106(5), 106(6) to any individual, party, corporate, associate, entity or otherwise. Plaintiff also never transferred his global right of the author and moral right to any individual, party, corporate, associate, entity or otherwise *ever*. Further, 17 U.S.C. § 201(d) TRANSFER OF OWNERSHIP states "(1) The ownership of a copyright may be transferred in whole or in part by any means of

---

[3] Case no. 4:20-cv-01523-YGR names defendants Mainsail LLC.; Shoreline Entertainment, Inc.; Sam Eigen; Morris Ruskin. (referred herein as "Mainsail".)

conveyance or operation of law" and "(2) Any of the exclusive rights comprised in a copyright, including any subdivision of any rights specified by section 106, may be transferred as provided by clause (1) and owned separately. ***The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title***." (emphasis added.)

26.    Plaintiff at the outset sent Mainsail the key art PSD file for its branded product and only authorized award-winning cover/poster/label to be displayed publicly due to the branding Plaintiff had created and 27 high resolution photographs as requested by them. (Exhibit 14 attached hereto; Decl.Mahon ¶ 17.) Then, as instructed by Mainsail, ***Maron Pictures sent all the master elements for the Motion Picture 'STRENGTH AND HONOUR' to Visual Data Media Services, Inc.*** ("Visual Data") ***in Burbank, California*** (Exhibit 15 attached hereto; Decl.Mahon ¶ 18.) including the only authorized trailer to be displayed publicly, as an award-winning motion picture. (Exhibit 16 attached hereto; Decl.Mahon ¶ 19.)

27.    In or around January 2010, the Motion Picture was commercially released in the Republic of Ireland (Exhibit 17 attached hereto; Decl.Mahon ¶ 20) contrary to the Mainsail agreement and in Europe with counterfeit covers and a counterfeit trailer, and not the ***only*** authorized cover or trailer Plaintiff had provided to Mainsail in violation of his rights, 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5), 501 and 602.  (Exhibit 18 attached hereto; Decl.Mahon ¶ 21.) Plaintiff then instructed Mainsail to "cease and desist" from distributing 'STRENGTH AND HONOUR' and wanted all the counterfeit product removed from "any place where the product's images or trailers [wa]s listed for sale". (Exhibit 19 attached hereto; Decl.Mahon ¶ 22.)

28.    In a follow-up email, Plaintiff instructed Mainsail that they "are in breach of [their] contract and the contracts in place with [Plaintiff] and Michael Madsen [Motion Pictures' leading actor]. Remove all product until the matter is resolved, as failure to do so will result in [Plaintiff] seeking substantial damages and costs from [Mainsail] and E1 [eOne UK]." (Exhibit 20 attached hereto; Decl.Mahon ¶ 23.) Tom Jarvis of eOne UK was also cc'ed during this correspondence. (Exhibit 19 attached hereto; Exhibit 20 attached hereto.)

29.    On February 4, 2010, Maron Pictures issued a *Screen and Advertising Statement of*

1  *Restrictions* specifying the talent advertising restrictions, which was issued to Mainsail on the

2  advice of an attorney from Los Angeles, Mr. Perry Wander, who Maron Pictures had engaged at

3  the end of January, 2010. (Exhibit 12 attached hereto.) Plaintiff was very irked about having to

4  issue this letter dated February 4, 2010, as ***Plaintiff never assigned his right to change his***

5  ***branded and copyright protected, award-winning cover and/or his right of the author to Maron***

6  ***Pictures, or any individual, party, corporate, associate, entity or otherwise, either***. Furthermore,

7  Maron Pictures had also provided Mainsail with the entire cast and crew contracts as part of its

8  delivery, which included Contractual Credit [Block] Obligations. (Exhibit 21 attached hereto;

9  Decl.Mahon ¶ 24.) Plaintiff felt very aggrieved at this point, as he knew for certain that Mainsail

10  had conclusively acted in bad faith.

11       30.    On February 9, 2010, Maron Pictures then contacted eOne UK directly as its

12  "cease and desist" instructions to Mainsail were ignored and spoke to Poonam Sahota,

13  Acquisitions Manager. It explained that the marketing and artwork was a clear violation of

14  Plaintiff's contract, copyrights, the Motion Pictures' leading actor's contract, the contractual

15  credit obligations, Advertising Restrictions and asked eOne UK to "cease and desist" with their

16  release in the Republic of Ireland and scheduled release in the United Kingdom for February 22,

17  2010. Later that day, Poonam Sahota emailed Maron Pictures and implied in her email that Maron

18  Pictures was happy for them to proceed with the marketing and artwork. (Exhibit 22 attached

19  hereto; Decl.Mahon ¶ 25.)

20       31.    On February 12, 2010, Maron Pictures emailed eOne UK and again relayed that it

21  was "not happy about proceeding with the current marketing and artwork." It further reiterated

22  that it is "a clear breach of Mr. [Michael] Madsen's and [Plaintiff's] contract". (Exhibit 23

23  attached hereto; Decl.Mahon ¶ 26.) Less than an hour later, Plaintiff emailed eOne UK again and

24  stated "[Maron Pictures] would like to make it very clear, [Maron Pictures] never agreed on the

25  phone that [Maron Pictures] would allow initial stock to go out". Plaintiff continued, "[y]ou

26  suggested that it should go out and that we could change it on the next print run but [Plaintiff]

27  never agreed to it." (Exhibit 24 attached hereto; Decl.Mahon ¶ 27.)

28       32.    Later the same day, Poonam Sahota of eOne UK emailed Maron Pictures and

- 9 -

1    stated that she "copied Sam [Eigen] who represents Mainsail, LLC, [eOne UK's] contractual

2    licensor." She further stated that "contractually our release as is, is above par and the contract

3    which we entered into with Mainsail authorizes us to go ahead with the release." She further

4    confirmed that "Sam [Eigen] has informed us further that the actor agreement with Michael

5    Madsen [leading actor] indicates that Michael Madsen is to receive second position billing." Of

6    course, this information that she relayed was factually incorrect, as Michael Madsen is the leading

7    actor of the Film and was to receive first position billing. It also should be noted that not only did

8    Mr. Madsen not receive his contractual first billing, but he did not even appear on the cover.

9    (Exhibit 12 attached hereto; Exhibit 18 attached hereto.)

10        33.      Entertainment One also advertised the Motion Picture with a photograph of Vinnie

11   Jones on the back cover not even from the Film and marketed it as a "Brit[ish] flick" in offensive

12   cultural appropriation and anti-Irish sentiment in misidentifying an award-winning indigenously

13   Irish story. This was extremely distasteful and upsetting to Plaintiff, who financed it and is an

14   *Irish* writer, producer, director telling a story about an *Irish-American* living in *Ireland* that is

15   set amongst the *Irish* travelling community. It was also completely shot in *Ireland*. (Exhibit 25

16   attached hereto; Decl.Mahon ¶ 28.) This was also in violation of the *Screen and Advertising*

17   *Statement of Restrictions* dated February 4, 2010, which was provided to Mainsail that stated

18   "Strength and Honour shall be referred to, as an Irish film." (Exhibit 12 attached hereto.)

19        34.      In response to Poonam Sahota at eOne UK, Maron Pictures pointed out there are

20   "lots of inaccuracies in [her] email on [Mainsail's] behalf, even [Mainsail's] quote about having

21   all control over the manner that it shall be sold and marketed," which referred to how it would be

22   marketed and sold to industry buyers as 1. Mainsail were provided a fully finished branded

23   product; 2. Mainsail were never assigned Plaintiff's right of the author and moral rights by Maron

24   Pictures under its 'Grant of Rights' which is very precise about the Grant of Rights that were only

25   assigned, and 3. Plaintiff, as the author of the Motion Picture did not waive his "right to vary,

26   change, alter, modify" his Property and did ***not*** his benefits of any provision of law known as the

27   "droit moral" or moral rights or any similar law in any country of the world" to begin with, so it

28   was *not possible for Maron Pictures to assign rights it never had control of*, nor were ever

- 10 -

1   assigned. (Exhibit 10 at 4.) Maron Pictures further made it clear that eOne UK were told a "bare

2   face lie in relation to Mr. [Michael] Madsen's contract" by Mainsail. Maron Pictures again asked

3   for an opportunity to speak to her directly, and assured her that "[i]f [Maron Pictures] can come to

4   a meeting of minds with E1 [eOne UK], then [Maron Pictures] will do this, which is why

5   [Plaintiff] would [like] a brief opportunity to speak to you [eOne UK]." (Exhibit 26 attached

6   hereto; Decl.Mahon ¶ 29.)

7        35.     On February 14, 2010, with no response forthcoming from eOne UK to its request,

8   Maron Pictures again asked eOne UK in a single line email, "[c]an we schedule a call for maybe

9   sometime tomorrow?" Ms. Sahota of eOne UK replied later that day stating "I met with Sam

10  [Eigen] at Shoreline [Mainsail] today and I think the best and simplistic approach for us all is for

11  our communications to go through them." (Exhibit 27 attached hereto; Decl.Mahon ¶ 30.) All of

12  Maron Pictures' emails to eOne UK were read and ignored after this. (Exhibit 28 attached hereto,

13  Decl.Mahon ¶ 31; Exhibit 29 attached hereto, Decl.Mahon ¶ 32; Exhibit 30 attached hereto,

14  Decl.Mahon ¶ 33; Exhibit 31 attached hereto, Decl.Mahon ¶ 34.)

15       36.     Throughout 2010, Maron Pictures also made various requests for information from

16  Visual Data in Burbank, California but its requests were refused due to Visual Data's contractual

17  arrangements with Mainsail. (Exhibit 32 attached hereto; Decl.Mahon ¶ 35.) However, Plaintiff

18  through Maron Pictures was provided a 'masters report' as a professional courtesy of all the

19  master elements for the Motion Picture and award-winning trailer that Plaintiff had supplied to

20  Visual Data on October 15, 2010. (Exhibit 16; Exhibit 33 attached hereto, Decl.Mahon ¶ 36.)

21       37.     On December 17, 2010, Maron Pictures again tried to reach out to eOne UK and

22  outlined that there is "a major dispute with Shoreline Entertainment." Maron Pictures further

23  reiterated that eOne UK "are aware of some of [the] complaints since the beginning of the year,

24  including the unauthorized covers and trailer which violates [Plaintiff's] contracts, amongst other

25  things." Maron Pictures also relayed that it "wanted to make [eOne UK] aware of the current

26  situation, as a professional courtesy, since [Maron Pictures] have had no accountability in any

27  manner from [Mainsail/Shoreline Entertainment]." (Exhibit 34 attached hereto; Decl.Mahon ¶

28  37.) Again, the email was read but completely ignored. (Exhibit 31 attached hereto; Decl.Mahon

¶ 34.)

38.     However, since 2010, the Motion Picture was also licensed for use and commercially released in over 41 countries by Mainsail, namely 1. Bahrain 2. Egypt 3. Iran 4. Iraq 5. Jordan 6. Kuwait 7. Lebanon 8. Oman 9. Palestinian Territories 10. Qatar 11. Saudi Arabia 12. Syria 13. United Arab Emirates 14. Republic of Yemen 15. Algeria 16. Morocco 17. Tunisia 18. Libya 19. Mauritania 20. Sudan 21. Somalia 22. Malta 23. Ireland 24. Great Britain 25. Romania 26. Thailand 27. Vietnam 28. Australia 29. New Zealand 30. Russia 31. Turkey 32. Indonesia 33. Malaysia 34. Brunei 35. Greece 36. Cyprus 37. Sweden 38. Denmark 39. Norway 40. Finland and 41. Iceland. It turned millions of dollars globally and enjoyed success all over the world. However, Plaintiff was not paid his consideration in accordance with his 'Agreement to Acquire Literary Material' and his 'Agreement to Acquire Authorship Rights' because Maron Pictures was never paid one brown cent or received a single royalty report from Mainsail LLC or from any other company commercially exploiting his Film either.

39.     Accordingly, on the *1st day of October, 2015, Plaintiff sent a formal 'Notice of Contract Revocation' to Maron Pictures revoking all rights* he had assigned to it as per clauses 5 and 4 of his Agreement, respectively. (Exhibit 9 at 6, 7 ; Exhibit 10 at 4, 5 ;  Exhibit 11.) Further, under the 'Assignment' clauses 14 and 11 of his Agreement, respectively, it states "Purchaser may assign and transfer this agreement or all or any part of its rights hereunder to any person, firm or corporation without limitation, and *this Agreement shall be binding upon* and inure to the benefit of *the parties hereto and their successors, representatives and assigns* forever." (emphasis added.) (Exhibit 9 at 12 ; Exhibit 10 at 9.) Plaintiff's rights also reverted back to him retroactively. (Exhibit 8 attached hereto.)

40.     At a court hearing pursued by Maron Pictures in State court during June 2016, the State court found that "Sam Eigen testified that Mainsail stopped all licensing activities when it received a "cease and desist" letter from Maron Pictures on January [30], 2010." (Case No. 4:20-cv-01523-YGR, Dkt. No. 31-26 at 5; Exhibit 19.) Mainsail (who had no rights relating to the Motion Picture other than those arising out of their agreement) also testified that Maron Pictures never delivered the Motion Picture to them, which Maron Pictures still disputes as: (1) it was just

- 12 -

1   **not possible** for Mainsail to get the masters or individual elements for 'STRENGTH AND

2   HONOUR' from anywhere else in the world, and (2) any derivatives that were unlawfully created

3   could only be produced from the master elements that were provided by Plaintiff through Maron

4   Pictures.

5   41.     On December 1, 2016, Plaintiff then met with a copyright solicitor on a personal

6   basis, Mark Stafford, partner of Lee & Thompson LLP in London, who had also been sent the

7   'Notice of Contract Revocation' that Plaintiff had sent Maron Pictures on October 1, 2015, and

8   sought legal advice in relation to same. (Exhibit 35 attached hereto; Decl.Mahon ¶ 38.)

9   42.     On December 9, 2016, the State court then granted Judgment in favor of Mainsail

10  LLC, Shoreline Entertainment, Inc. and Sam Eigen and decreed that Maron Pictures would take

11  nothing by way of its complaint. (Exhibit 36 attached hereto; Decl.Mahon ¶ 39.) In other words,

12  the court ruled that the contract was **not** enforceable and thus, Maron Pictures was not entitled to

13  an accounting. However, since Maron Pictures never delivered the Motion Picture as *claimed* by

14  Mainsail, i.e. Plaintiff's personal property, Mainsail had no legal right to use Plaintiff's property

15  and had used it without Maron Pictures consent before October 1, 2015 and also used it without

16  Plaintiff's consent under the continuing violation doctrine.

17  43.     Meanwhile, Plaintiff's Motion Picture still continued to be performed around the

18  world in 2016 with a counterfeit cover and trailer, differing from Mainsail's testimony and "a

19  "cease and desist" letter from Maron Pictures on January [30], 2010", which was purportedly

20  acted upon by Mainsail in 2010. However, the Motion Picture was still being used in Ireland, the

21  United Kingdom and Europe through the United States with a counterfeit cover and trailer

22  through Defendants and through companies headquartered in the United States via Apple and

23  Google in violation of Plaintiff's copyright 17 U.S.C. §§ 106(1), 106(2), 106(3), 106(4), 106(5),

24  106(6), 501 and 602. (Exhibit 37 attached hereto; Decl.Mahon ¶ 40.) Plaintiff's rights of the

25  author were also being violated globally contrary to the *Berne Convention for the Protection of*

26  *Literary and Artistic Works*, which the United States and Republic of Ireland are also signatories

27  of, as his rights of the author, copyright in relation to same and moral rights were never assigned

28  to any individual, party, corporate, associate, entity or otherwise **_ever_**, and were not subject to any

- 13 -

1   agreement. Plaintiff also made a commercial purchase of the Motion Picture in 2016 for proof of

2   Defendants' willful actions, which they had provided to other corporate entities directly or

3   indirectly in the United States too. (Exhibit 38 attached hereto; Decl.Mahon ¶ 41.)

4         44.    In or around February 2018, Maron Pictures was then sent a random Entertainment

5   One royalty report (Exhibit 39 attached hereto; Decl.Mahon ¶ 42), which Plaintiff believes was an

6   error showing Entertainment One had collected GBP £354,428.75 from his Motion Picture, or

7   U.S.$489,111.66 based on the pound/dollar rate of 1.38. (Exhibit 40 attached hereto; Decl.Mahon

8   ¶ 43.) The email also stated "[i]f the title is in overage, please provide an invoice for the amount

9   due to you." (Exhibit 39.) Plaintiff found this bizarre, considering when he had previously sought

10   information and accounting years earlier, he was told that eOne UK's contractual licensor was

11   Mainsail and they had *nothing* to do with Maron Pictures.

12         45.    Defendants were still infringing Plaintiff's copyright, his rights of the author

13   through the United States, the Republic of Ireland and the United Kingdom and still using

14   counterfeit labels and packaging in 2019 as is evidenced by further commercial purchases of

15   same. (Exhibit 41 attached hereto, Decl.Mahon ¶ 44; Exhibit 42 attached hereto, Decl.Mahon ¶

16   45.)

17         46.    Defendants were also still having benefit of Plaintiff's copyright, rights of the

18   author and his required metadata in 2019 and were directly, contributorily and/or vicariously

19   infringing Plaintiff's right of the author through Apple and Google. (Exhibit 43 attached hereto,

20   Decl.Mahon ¶ 46; Exhibit 44 attached hereto, Decl.Mahon ¶ 47; Exhibit 45 attached hereto,

21   Decl.Mahon ¶ 48; Exhibit 46 attached hereto, Decl.Mahon ¶ 49.)

22         47.    Defendants were also falsely advertising the award-winning Irish Film in offensive

23   cultural appropriation and anti-Irish sentiment in misidentifying the indigenously Irish story as a

24   "Brit[ish] flick" in violation of the *Screen and Advertising Statement of Restrictions*, which called

25   for the Film to be identified as an "Irish film" and in violation of the Berne Convention

26   Implementation Act of 1988. (Exhibit 12.) This is rather more distasteful when one considers

27   Britain's ghastly, oppressive and bloody history in Ireland.

28         48.    In or around early ***December 2019, Plaintiff only discovered and got evidence for***

*the first time via an official confirmation from Visual Data that his copyright protected Motion*

*Picture masters had been unlawfully copied and distributed in the State of California at Visual*

*Data contrary to 17 U.S.C. §§ 106 (1), 106 (2), 106 (3),106 (4), 106 (5), 501 and 602 without his*

*consent* (Exhibit 47 attached hereto, Decl.Mahon ¶ 50; Exhibit 48 attached hereto, Decl.Mahon ¶

51) and those counterfeit/illicit copies were acquired by numerous companies around the world,

who have been commercially exploiting Plaintiff's copyright protected screenplay/Film under the

continuing violation doctrine. (Exhibit 49 attached hereto; Decl.Mahon ¶ 52.) However, since

these counterfeit/illicit copies were created in the State of California, then every copy that

stemmed from them were unlawful, as the copyrighted Motion Picture masters were 'records'

from which the work could be 'reproduced', and it is a tort to make them in the United States.

49.     While Entertainment One may not have had anything directly to do with the

original creation of the counterfeit/illicit copies they received initially via Mainsail through

Visual Data, it is a tort once they decided to distribute, import and/or export the copies and its

required metadata that they were in receipt of, including the counterfeit covers and trailer directly

or indirectly, to technology companies headquartered in the United States. (Exhibit 2 attached

hereto.)

50.     In or around December 12, 2019, Plaintiff then wrote to Entertainment One and

informed them that they had infringed his copyright and that he is entitled to recover his actual

damages and profits pursuant to Federal Copyright Law (17 U.S.C. § 504) and made a demand of

$9,220,235, which he required payment of. (Exhibit 50 attached hereto; Decl.Mahon ¶ 53.)

Plaintiff also attached a certified copy of his Certificate of Registration from the United States

Copyright Office, PA 1-398-376, certified by Comyn, Kelleher, Tobin Solicitors and a letter from

his Chartered Accountants and Registered Auditors, Moore, confirming his actual costs/damages

of $8,753,310. (Exhibit 51 attached hereto; Decl.Mahon ¶ 54.)

51.     On January 2, 2020, Erin from Content & Internet Services Legal, Apple Inc.

contacted Plaintiff because Apple was also using his copyright protected Motion Picture without

his authorization, which was provided to them through Entertainment One and in global violation

of his rights of the author. Further, Plaintiff only discovered for the first time from Apple Inc. that

"Entertainment One US LP" was the provider who had given it to them too. (Exhibit 52 attached hereto; Decl.Mahon ¶ 55.)

52.     On January 8th, 2020, Simon Osborn, Head of Legal and Business Affairs for eOne UK wrote to Plaintiff and stated that "Entertainment One were granted all linear distribution rights, which included 'all means of download and streaming', in this film by way of an agreement with Mainsail LLC". He also confirmed that they authorized giving it to "the likes of iTunes, Google and other digital platforms" and sought assurances that "no further action will be taken against these platforms". (Exhibit 53 attached hereto; Decl.Mahon ¶ 56.)

53.     On January 10th, 2020, Plaintiff wrote to Mr. Osborn and attached the 'Entertainment One Demand Letter', which was issued to Entertainment One Ltd. via their Santa Monica, California office, dated December 12th, 2019. Plaintiff also confirmed that copyright infringements lawsuits were being drafted against several companies including Entertainment One US LP for infringing his copyright.  (Exhibit 54 attached hereto; Decl.Mahon ¶ 57.)

54.     On February 10, 2020, Simon Osborn of eOne UK emailed Plaintiff and said that they had discussed the matter with their licensor, Mainsail LLC, and that they are not in default. (Exhibit 55 attached hereto; Decl.Mahon ¶ 58.)

55.     The same day, Kathlyn Querubin, Litigation Counsel for Google LLC also contacted Plaintiff and factually confirmed that the film was made available on the Google Play platform for distribution by Google LLC through Entertainment One. (Exhibit 56 attached hereto; Decl.Mahon ¶ 59.)

56.     Google Play lists itself as a service provided by Google LLC, with an address at "1600 Amphitheatre Parkway[,] Mountain View, CA 94043[,] USA" in Ireland. (Exhibit 57 attached hereto; Decl.Mahon ¶ 60.) YouTube LLC also lists its address as "San Bruno, CA 94066[,] USA" in Ireland (Exhibit 58 attached hereto; Decl.Mahon ¶ 61.)

57.     On March 2, 2020, Plaintiff filed a Complaint in the United States District Court, Northern District of California against Entertainment One US LP.; Entertainment One Licensing US, Inc.; Entertainment One Ltd.; E1 Entertainment UK Ltd. for: (1) Copyright Infringement; (2) Infringement of Right of the Author; (3) Trafficking in illicit labels, or packaging; (4)

1   Conversion. (Case No. 4:20-cv-01527-YGR; ECF 1.) Plaintiff also filed similar complaints

2   against Mainsail (case no. 4:20-cv-01523-YGR); Google (case no. 4:20-cv-01525-YGR) and

3   Apple (case no. 4:20-cv-01534-YGR), which are presently before the court.

4          58.    On April 7, 2020, in a case that is currently before the court, Case no. 4:20-cv-

5   01523-YGR, Sam Eigen, an executive with Mainsail LLC and Shoreline Entertainment, Inc.

6   admitted that Mainsail/Shoreline was only authorized to represent the Film in territories "outside

7   of the Unites [sic] States and Ireland, and never represented the Film in either the United States or

8   Ireland". (Exhibit 13 attached hereto.)

9          59.    On April 8, 2020, Mia Jones of Visual Data confirmed that Mainsail/Shoreline

10  Entertainment authorized and gave instruction to Visual Data to copy and ship the Film, as per the

11  list of assets sent to Plaintiff on December 16, 2019.  (Exhibit 59 attached hereto; Decl.Mahon ¶

12  62.)

13         60.    On April 23, 2020, the case was reassigned to Hon. Judge Yvonne Gonzalez

14  Rogers. (Case No. 4:20-cv-01527-YGR; ECF 27.)

15         61.    On May 1, 2020, Entertainment One filed a Motion to Dismiss Plaintiff's

16  Complaint for Lack of Personal Jurisdiction and Failure to State a Claim. (Case No. 4:20-cv-

17  01527-YGR; ECF 34.)

18         62.    On May 11, 2020, in an article that appeared in The Independent in the United

19  Kingdom, it noted that Michael Madsen considers the Motion Picture "to be his strongest work"

20  and also "the one film Madsen made that earned compliments from his father, who died in 2015."

21  (Exhibit 60 at 8 [7] attached hereto, Decl.Mahon ¶ 63.) It also acknowledged that "Madsen…

22  suspects [the Film's] disappearance had something to do with Harvey Weinstein. The convicted

23  rapist and former movie mogul is a figure intertwined with Tarantino lore, a man who both

24  financed his movies and sexually harassed a number of his stars (including Uma Thurman, Daryl

25  Hannah and Rosanna Arquette)." (Exhibit 60 attached hereto.)

26         63.    On May 15, 2020, Plaintiff filed Opposition to Entertainment One's Motion to

27  Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. (Case No. 4:20-cv-01527-

28  YGR; ECF 39.)

64.     On May 22, 2020, Entertainment One filed a Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss. (Case No. 4:20-cv-01527-YGR; ECF 42.)

65.     On August 7, 2020, the Court issued an Omnibus Order with Entertainment One's motion to Dismiss **GRANTED IN PART** and **DENIED IN PART**. Entertainment One also moved to dismiss Plaintiff's right of the author claim as Plaintiff had only sought this relief pursuant to 17 U.S.C. § 106A, which was futile. The Court also granted leave to amend the Complaint after a short period of limited discovery. (Case No. 4:20-cv-01527-YGR; ECF 52.)

66.     In or around October 8, 2020, Entertainment One provided some information in relation to a limited discovery. However, Plaintiff only discovered that the Film was provided through an agreement between Entertainment One U.S. LP to Google Inc. [LLC] and Google Ireland Limited (the "Google Agreement"); and under a separate agreement between Entertainment One U.S. LP and iTunes S.a.r.l., who then provided the Film to Apple Inc. Furthermore, the responses provided were contradictory based on other answers and the supporting documentation they provided Plaintiff. (Exhibit 61 attached hereto; Decl.Mahon ¶ 64.)

67.     On October 12, 2020, Plaintiff then only got evidence of the agreement between Entertainment One U.S. LP and iTunes S.a.r.l. (the "iTunes Agreement"). This iTunes Agreement applied to video content in general and was not limited to, nor did it specifically identify, Plaintiff's Motion Picture. However, the iTunes Agreement supplied related to provided content within the United Kingdom only. While Plaintiff is aware that his Motion Picture was also made available in Great Britain through Apple Inc. d/b/a iTunes Store, the proof of purchases provided by Plaintiff were made from iTunes Store through the Republic of Ireland. (Exhibit 37 at 4 attached hereto; Exhibit 46.) Moreover, the Republic of Ireland is a sovereign country and does not come under the jurisdiction of the United Kingdom or Great Britain. Furthermore, Entertainment One also provided evidence that Apple Inc. had imported the Film's asset and metadata through iTunes Connect plausibly to servers located in the United States, where Plaintiff has evidence Apple Inc. d/b/a iTunes Store operates from for Ireland. (Exhibit 62 attached hereto; Decl.Mahon ¶ 65.)

68.     By October 12, 2020, Entertainment One did not provide any supporting

paperwork for their Google Agreement, but had stated that eOne UK provided the Motion Picture "pursuant to an agreement between Entertainment One US, L.P., Google Inc., and Google Ireland Limited (the "Google Agreement")." (Exhibit 61 at p. 8.) They also stated the Google Agreement applied to video content in general and it was not limited to, nor did it specifically identify, Plaintiff's Motion Picture.

69.     On October 28, 2020, Plaintiff filed the First Amended Complaint ("FAC"). (Case No. 4:20-cv-01527-YGR; ECF 55.)

70.     On November 18, 2020, Entertainment One filed a Motion to Dismiss the FAC for Lack of Personal Jurisdiction and Failure to State a Claim. (Case No. 4:20-cv-01527-YGR; ECF 56.)

71.     On December 2, 2020, Plaintiff filed an Opposition to Entertainment One's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. (Case No. 4:20-cv-01527-YGR; ECF 58.)

72.     On December 9, 2020, Entertainment One filed a Reply to Plaintiff's Opposition to Entertainment One's Motion to Dismiss. (Case No. 4:20-cv-01527-YGR; ECF 61.)

73.     On December 10, 2020, the Court issued an Order regarding the Motion to Dismiss and instructed Entertainment One that they were to provide a copy of the Google Agreement to Plaintiff. (Case No. 4:20-cv-01527-YGR; ECF 62.)

74.     On December 22, 2020, Entertainment One provided Plaintiff with the Google Agreement and provided the Court with a Statement confirming same. (Case No. 4:20-cv-01527-YGR; ECF 63.)

75.     On January 11, 2021, Plaintiff filed a Supplemental Opposition to Entertainment One's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim in accordance with the Court's December 10, 2020 Order. (Case No. 4:20-cv-01527-YGR; ECF 64.)

76.     On January 25, 2021, Entertainment One filed a supplemental response. (Case No. 4:20-cv-01527-YGR; ECF 67.)

77.     On February 12, 2021, the Court issued another Order requiring Supplemental Briefing. (Case No. 4:20-cv-01527-YGR; ECF 68.)

78.     On February 23, 2021, Plaintiff filed a supplemental brief in opposition to Entertainment One's motion to dismiss (Case No. 4:20-cv-01527-YGR; ECF 69), and Entertainment One filed a supplemental brief to their motion to dismiss. (Case No. 4:20-cv-01527-YGR; ECF 70.)

79.     On April 8, 2021, the court issued an Order Granting Entertainment One's Motion to Dismiss for lack of personal jurisdiction. (Case No. 4:20-cv-01527-YGR; ECF 77.) However, Plaintiff believes that Entertainment One's case was primarily dismissed because he was unaware that the Licenses provision of the Google Agreement and iTunes Agreement would have legal standing in relation to his Film, as Entertainment One had been instructed to 'cease-and-desist' distributing his Film back in 2010 and had yet, licensed it under these agreements without his consent or knowledge through an United States entity. Moreover, the Google Agreement is also subject to the territorial boundaries of the United States.

80.     On October 6, 2021, Plaintiff only discovered and got evidence that Mainsail never provided a counterfeit cover to Defendants to use with his Film, so therefore concludes that Entertainment One created the counterfeit cover on its own accord. (Exhibit 63 at [p. 4] ¶ 5 ; Decl.Mahon ¶ 66.) Furthermore, Plaintiff also only discovered and got evidence that Mainsail gave no instructions to Defendants "to market the F[ilm] as a 'Brit Flick'". (Exhibit 63 at [p. 7] ¶ 11; Decl.Mahon ¶ 66.) Therefore, Plaintiff must conclude that Defendants decided to market the Film in offensive cultural appropriation and anti-Irish sentiment in misidentifying an award-winning indigenously Irish story, of their own accord and in violation of the *Screen and Advertising Statement of Restrictions*, dated February 4, 2010; in violation of the Berne Convention Implementation Act of 1988 and in violation of a global copyright treaty the Berne Convention.

81.     Plaintiff is an Irish citizen and advertising his award-winning, Irish Film, which is also a one hundred percent (100%) Irish product, as a "Brit flick" is extremely distasteful and offensive to Plaintiff, especially considering Britain's ghastly, grisly and oppressive history in Ireland, which is still very fresh for most Irish people. Moreover, this flagrant disregard of Plaintiff's rights and heritage; racial discrimination, harassment, oppression and deprivation of

1   Plaintiff's rights since 2010 when eOne UK were directly advised by Plaintiff that they were in

2   breach of Plaintiff's contract, still inflicts much emotional distress on Plaintiff as to their

3   complete blatant disregard of his rights under the continuing violation doctrine.

4   **FIRST CLAIM FOR RELIEF**

5   **Infringement of Right of the Author – 17 U.S.C. § 106.**

6   **(Direct, Contributory, Vicarious Against All Defendants)**

7   82.     Plaintiff repeats and re-alleges the averments contained in paragraphs 1 - 81 as

8   though fully set forth herein.

9   83.     Plaintiff, Mark Mahon, is the sole legal and beneficial owner of the copyright in an

10  original work that is fixed in a tangible media of expression. Effective on March 8, 2006, the

11  United States Copyright Office issued Plaintiff a copyright registration certificate for the original

12  screenplay, STRENGTH AND HONOR, TXul-289-556; on August 6, 2009, the United States

13  Copyright Office issued Plaintiff a copyright registration certificate for his Film, STRENGTH

14  AND HONOUR, PA 1-642-297; and on May 3, 2017, the United States Copyright Office issued

15  Plaintiff a supplementary copyright registration certificate for his Film, STRENGTH AND

16  HONOUR, PA 1-398-376, to reflect that Plaintiff, Mark Mahon, is the registered author, writer,

17  producer, feature director and owner of the exclusive rights of the Copyright.

18  84.     Upon information, belief, and proof, Entertainment One have acted in violation of

19  Federal copyright law, 17 U.S.C. §§ 101, *et seq.*, in violation of the Berne Convention

20  Implementation Act of 1988 and in violation of an international copyright treaty the *Berne*

21  *Convention for the Protection of Literary and Artistic Works*, which the United States of America

22  and the Republic of Ireland are signatories and contracting parties. Accordingly, as legislated for

23  pursuant to the Berne Convention Implementation Act of 1988, "[t]he obligations of the United

24  States under the Berne Convention may be performed only pursuant to appropriate domestic law"

25  (BCIA Sec.2(2)) and violations of the Berne Convention "shall be given effect under title 17…

26  and any other relevant provision of Federal or State law, including the common law;" (BCIA

27  Sec.3(a)(1).) Consequently, Plaintiff seeks redress for Infringement of Right of the Author

28  pursuant to 17 U.S.C. §§ 101, *et seq.*, against all Defendants and as also legislated for under the

- 21 -

1    international protection of his rights pursuant to the Berne Convention.

2        85.    Upon information, belief, proof and admission of use, Defendants have

3    unlawfully imported, routed, cached, transmitted, stored, produced, copied, reproduced,

4    reformatted, distributed, exported, sold for profit and performed Plaintiff's copyright protected

5    work and imported, routed, cached, transmitted, stored, produced, reformatted, copied,

6    distributed, exported, reproduced counterfeit derivatives of Plaintiff's copyright protected work

7    and its required metadata that stemmed from Mainsail and the State of California at Visual Data

8    as directed by Mainsail in violation of Plaintiff's Right of the Author. Accordingly, Plaintiff seeks

9    redress pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and the Berne Convention

10   Implementation Act of 1988 for international violations in accordance with the Berne

11   Convention.

12       86.    Entertainment One distributed counterfeit and illicit copies of the Motion Picture,

13   which also infringed the right of the author of the screenplay, Film and its required metadata, to

14   technology companies headquartered in the United States, and/or imported or exported

15   counterfeit copies, indirectly or directly, which may also constitute direct infringement of right of

16   the author pursuant to 17 U.S.C. § 602 (a).

17       87.    On Entertainment One's instruction using the services of other companies,

18   Entertainment One also imported, distributed and/or exported Plaintiff's copyright protected

19   electronic metadata through digital master copies in violation of Plaintiff's right of the author of

20   his screenplay and Motion Picture with counterfeit covers and a counterfeit trailer that they

21   provided to Google Inc. [LLC], who in turn distributed it to Google LLC; Google LLC d/b/a

22   Google Play; Google LLC d/b/a Google Play platform and YouTube LLC, who then subsequently

23   imported it; distributed it through their servers in the United States and exported it to the Republic

24   of Ireland, the United Kingdom and Europe through the Internet. Entertainment One U.S. LP also

25   acted as an agent or facilitator for Entertainment One UK Limited in doing so.

26       88.    Entertainment One also distributed, imported and/or exported it to iTunes S.a.r.l.

27   who using the services of other companies then distributed, imported and/or exported it to Apple

28   Inc. with Entertainment One's consent, knowledge and/or instruction. Defendants' acts also

1    interfere with Plaintiff's rights in violation of the Berne Convention Implementation Act of 1988

2    and in violation of an international copyright treaty the *Berne Convention for the Protection of*

3    *Literary and Artistic Works*, as well as Plaintiff's exclusive right of the author under same.

4         89.    Accordingly, Plaintiff seeks redress under the Copyright Act, 17 U.S.C. §§ 106,

5    501 and 602, for violation of Plaintiff's exclusive rights under infringement of right of the author

6    to import, host, route, cache, transmit, store, reformat, produce, reproduce, export, sell, perform,

7    copy, distribute his copyright protected screenplay, Film and its required metadata, including but

8    not limited to the individual images of the Motion Picture, as they hosted, routed, cached,

9    transmitted, stored, reformatted, produced, reproduced, copied, performed and distributed copies

10   of Plaintiff's copyright protected work for their own profit; and made, hosted, cached, routed,

11   transmitted, stored, reformatted, produced, reproduced, copied, performed and distributed

12   derivative counterfeit works, as they also exported, distributed, imported and sold for profit his

13   copyright protected screenplay, Motion Picture and its required metadata without Plaintiff's

14   consent under the continuing violation doctrine.  Furthermore, Entertainment One willfully

15   distributed, imported, exported his screenplay and Film without his consent with a counterfeit

16   cover and counterfeit trailer to, in and from the United States directly and/or indirectly, which

17   was subsequently used in the United States and then exported throughout the Republic of Ireland,

18   the United Kingdom and Europe. Entertainment One had reckless regard for the copyright

19   owner's rights.

20         90.    Upon information, belief, proof and admission of use, Entertainment One

21   exported, hosted, routed, cached, transmitted, stored, reformatted, produced, reproduced, copied,

22   performed, distributed and/or imported unlawful copies in violation of Plaintiff's rights to his

23   Motion Picture, screenplay and its required metadata, which included a counterfeit cover and

24   trailer, and distributed/imported/exported it to companies around the world, including but not

25   limited to technology companies headquartered in California. Google LLC; Google LLC d/b/a

26   Google Play; Google LLC d/b/a Google Play platform; Google LLC d/b/a Google Play Store;

27   YouTube LLC; Apple Inc. and Apple Inc. d/b/a iTunes Store still had Plaintiff's Motion Picture

28   available for purchase online around the world in 2019 via their digital distribution platforms.

91.     Physical retail copies which would have also stemmed from Plaintiff's cloned masters are also still available for purchase around the world even today, including but not limited to Amazon and are still presently infringing the right of the author. Further, Entertainment One knowingly allowed Google Inc. [LLC] and Google Ireland Limited to perform direct distribution through the United States. Consequently, Entertainment One vicariously infringed and contributed to Google's infringement too by providing an appearance of right as they infringed the right of the author through the United States.  Entertainment One also vicariously infringed and contributed to Apple's infringement by providing an appearance of right too, as they infringed the right of the author through the United States.

92.     Defendants' infringement of right of the author has been undertaken with intent to financially gain from Plaintiff's copyright protected work. Defendants have failed to exercise their right and ability to supervise persons within their control to prevent infringement of right of the author, especially after Entertainment One were instructed to 'cease and desist' while knowingly using counterfeit covers and a counterfeit trailer, which they are still using, and they did so with malice and intent to further their own financial interests with the willful infringement of Plaintiff's right of the author; his legal, commercial and all beneficial rights as author, writer, producer, director and owner of exclusive rights of the screenplay 'STRENGTH AND HONOR' and as author of his award-winning, Film, 'STRENGTH AND HONOUR'. Plaintiff never assigned his right of the author to any individual, party, corporate, associate, entity or otherwise in any country of the world. Thus, all Defendants have directly and/or willfully infringed the exclusive rights of the author, i.e., Plaintiff, Mark Mahon; plus Entertainment One have contributorily and/or vicariously infringed the rights of the author through Apple and Google; Apple Inc. have contributorily and/or vicariously infringed the rights of the author through the iTunes Store; and Google LLC have contributorily and/or vicariously infringed the rights of the author through Google Play and YouTube.

93.     The above-described conduct by Defendants also constitutes infringement of right of the author enforceable under the Copyright Act pursuant to The Berne Convention Implementation Act of 1988, in accordance with the *Berne Convention for the Protection of*

1 *Literary and Artistic Works.* Further, to the extent that Plaintiff fails to demonstrate entitlement to

2 actual damages and Defendants' profits, Plaintiff reserves his right to ask the Court for statutory

3 damages under willful infringement.

4       94.    As a result of the above-described conduct by Defendants, Plaintiff has been

5 damaged in an amount to be proven at trial and Plaintiff is entitled to his actual damages. Plaintiff

6 submits his actual damages are $351,000 for the willful infringement of the right of the author for

7 his screenplay and $8,753,310 for the willful infringement of the right of the author of his Film by

8 Defendants.

9       95.    By reason of the infringement of right of the author described above, Plaintiff is

10 also entitled to recover Entertainment One's profits to the extent the same are not included as part

11 of Plaintiff's damages, which Plaintiff believes to be in excess of $489,111.66 under the

12 continuing violation doctrine. However, Plaintiff reserves the right to amend this figure as the

13 exact figure cannot be determined at this time but Plaintiff is entitled to recover all of

14 Entertainment One's profits attributable to their willful infringement of the right of the author.

15 Plaintiff also requests all other relief allowed under the Copyright Act.

16       96.    Plaintiff is also entitled to recover from Defendants his costs and attorneys' fees

17 per infringement of right of the author.

18       97.    Entertainment One's infringement of right of the author has also caused irreparable

19 harm to Plaintiff, Mark Mahon, for which he has no adequate remedy at law. Unless this Court

20 restrains Entertainment One from infringing Plaintiff's Copyright protected work, the harm will

21 continue to occur in the future. Accordingly, Plaintiff is entitled to preliminary and permanent

22 injunction.

23                   **SECOND CLAIM FOR RELIEF**

24         **Interference with Plaintiff's Rights in violation of The Berne**

25               **Convention Implementation Act of 1988**

26                   **(Against All Defendants)**

27       98.    Plaintiff repeats and re-alleges the averments contained in paragraphs 1 - 97 as

28 though fully set forth herein.

99.     Defendants interfered with Plaintiff's right entitling him "to object to any distortion, mutilation, or other modification of, or other derogatory action in relation to, the work, that would prejudice the author's honor or reputation." BCIA Sec.3 (b)(2).

100.    Defendants adopted the conduct, through their officers, directors, managing agents, or supervisory employees. Entertainment One further ratified the conduct by failing to take appropriate prompt remedial action when it was brought to their attention in 2010 that they were in breach of Plaintiff's contract.

101.    Plaintiff believes a substantial motivating reason for Entertainment One's conduct was because Plaintiff is Irish, and knowingly allowed Defendants to subject Plaintiff to racial discrimination, racial harassment, oppression and deprived Plaintiff of his rights.

102.    Defendants, and each of them, knew, or should have known, that they interfered with Plaintiff's right to be free to object to any distortion, mutilation, or other modification of, or derogatory actions in relation to his work, which did prejudice Plaintiff's honor and reputation.

103.    Defendants further interfered with Plaintiff's right to be free from discrimination on the basis of race as set forth above, and Defendants permitted conditions that denied Plaintiff a constitutional right, which is also recognized under global copyright treaties and law, entitling him to object to the distortion, mutilation, or other modification in relation to his work, which did prejudice his honor and reputation.

104.    Defendants' conduct caused Plaintiff to suffer for over a decade, and continue to suffer damages as set forth above.

105.    By reason of the conduct of Defendants as alleged herein, Plaintiff has been forced to prosecute the present action. Plaintiff will also engage the services of counsel once the matter proceeds to trial. Plaintiff is therefore entitled litigation expenses and to reasonable attorney's fees, once he engages them, including expert witness fees and costs, incurred in bringing this action.

106.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiff, with the conscious disregard of the rights and safety of Plaintiff; and with an improper and evil motive amounting to malice. Plaintiff

1   is thus entitled to recover punitive damages from Defendants in an amount according to proof.

2   **THIRD CLAIM FOR RELIEF**

3   **Fraud – California Civil Code § 338(d)**

4   **(Concealment, Omission, Oppression, Malice and Conscious**

5   **Indifference Against Defendant Entertainment One)**

6   107.   Plaintiff repeats and re-alleges the averments contained in paragraphs 1 - 106 as

7   though fully set forth herein.

8   108.   Upon information, belief and proof, Entertainment One committed concealment

9   and omission fraud. Civil fraud, concealment fraud, constructive fraud, deceit and

10  misrepresentation are defined in *Civil Code* Sections 1572, 1573, 1709 and 1710. Concealment

11  and/or omission theory fraud occurs when there is a fiduciary or *other* relationship between the

12  parties where there is a duty of full disclosure. The concealing person, with an intention to

13  deceive, does not disclose important facts that the concealing person knows but the injured party

14  does not know and the injured party was harmed by the concealment. Any relationship between

15  the parties to a transaction may create a duty to disclose.

16  109.   California Civil Code § 338(d) provides "[a]n action for relief on the ground of

17  fraud or mistake. The cause of action in that case is not deemed to have accrued until the

18  discovery, by the aggrieved party, of the facts constituting the fraud or mistake." "Malice" means

19  that defendants acted with intent to cause injury or that Entertainment One's conduct was

20  despicable and was done with a willful and knowing disregard of the rights or safety of another.

21  California Civil Code section 3294(c)(1). "Oppression" means that defendants' conduct was

22  despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiff's

23  rights. California Civil Code section 3294(c)(2). Plaintiff alleges that Entertainment One acted

24  with oppression, malice and conscious indifference of the consequences for Plaintiff, which

25  resulted in further and aggravated injury to him.

26  110.   In or around January/February 2010, Entertainment One were made aware directly

27  by Plaintiff that they were to "cease-and-desist" with their release in the Republic of Ireland and

28  the United Kingdom over their unauthorized use of counterfeit covers and a counterfeit trailer and

1   for being in breach of "the contracts in place with [Plaintiff] and Michael Madsen [leading actor

2   in Film]". Plaintiff also instructed them to "[r]emove all product until the matter is resolved, as

3   failure to do so will result in [Plaintiff] seeking substantial damages and costs from [Mainsail]

4   and E1 [eOne UK]." Plaintiff subsequently issued a *Screen and Advertising Statement of*

5   *Restrictions Letter* dated February 4, 2010 as Plaintiff had only ever authorized a branded, award-

6   winning cover/label and trailer, which he had provided to Mainsail. The Advertising Restrictions

7   detailed that Michael Madsen is to receive credit and form in first position in any advertising and

8   also noted that "Strength and Honour shall be referred to, as an Irish film."

9       111.    On February 9, 2010, Plaintiff through Maron Pictures contacted eOne UK directly

10   as its "cease and desist" instructions to Mainsail, which eOne UK were also cc'd on, were ignored

11   and spoke to Poonam Sahota, Acquisitions Manager. Plaintiff explained that the marketing and

12   artwork was a clear violation of Plaintiff's contract, copyright, the leading actor's contract and

13   asked Defendants directly to "cease and desist" using his copyright protected screenplay/Motion

14   Picture and with their release in the Republic of Ireland and scheduled release in the United

15   Kingdom for February 22, 2010.

16       112.    On February 14, 2010, eOne UK instructed Plaintiff to ***not*** communicate directly

17   with them again despite Plaintiff trying to resolve the matter. However, with further blatant

18   disregard for Plaintiff's rights, Entertainment One proceeded with their release and also

19   fraudulently advertised and marketed the Motion Picture under the continuing violation doctrine,

20   as a "Brit[ish] flick" in offensive cultural appropriation and anti-Irish sentiment in misidentifying

21   an award-winning indigenously Irish story in violation of the Advertising Restrictions, despite

22   Plaintiff being an ***Irish*** writer, producer, director, who financed the Film; telling a story about an

23   ***Irish-American*** living in ***Ireland*** that is set amongst the ***Irish*** travelling community.

24   Accordingly, Plaintiff seeks relief on three counts:

25       113.    *Firstly*, in or around January 2, 2020, Plaintiff only discovered that Entertainment

26   One U.S. LP had used his Film when Apple Inc. informed him that Entertainment One U.S. LP

27   had provided the Film to them. Plaintiff then only discovered between October 8, 2020 and

28   October 12, 2020, that in or around September, 2009, Entertainment One U.S. LP entered a

distribution deal with iTunes S.a.r.l. (the "iTunes Agreement"). Entertainment One subsequently distributed Plaintiff's Motion Picture through and as part of this deal in or around February, 2010, despite being made directly aware in late January/early February 2010 that they were violating Plaintiff's contract, Plaintiff's copyrights and the required metadata for his Film, and were knowledgeable of the fact that were using a counterfeit cover for the award-winning Motion Picture and a counterfeit trailer, as they had been instructed to "cease-and-desist" in January and February 2010.

114.    Although the iTunes Agreement applied to video content in general, nor did it specifically identify, Plaintiff's Film, due to the Payments and Reports provision of the iTunes Agreement, plus Entertainment One's admissions that they provided Plaintiff's Film under this agreement, establishes that Entertainment One had provided and profited from Plaintiff's Film without Plaintiff's knowledge or consent using a transfer instrument for a United States entity, which by admission included the sale or exchange of Plaintiff's property and his copyright protected work for pecuniary gain through this transfer instrument. Entertainment One also provided indirectly or directly the Film to Apple Inc. through the iTunes Agreement.

115.    Entertainment One U.S. LP and Entertainment One UK Limited intentionally failed to disclose these facts that were known only to them when they provided his property through a transfer instrument from a United States entity and that Mark Mahon could not have discovered. Mark Mahon did not know of the concealed facts. Further, Entertainment One U.S. LP and Entertainment One UK Limited intended to deceive Mark Mahon by concealing the facts. Had the concealed information been disclosed, Mark Mahon reasonably would have behaved differently by pursuing litigation against Entertainment One years earlier and would not have had to endure nearly a decade of undue and unnecessary cruelty, racial discrimination, racial harassment, malice, oppression and depriving him of his rights; Accordingly, Mark Mahon was harmed as a result of their actions; and Entertainment One U.S. LP and Entertainment One UK Limited's concealment was a substantial factor in causing Mark Mahon's harm.

116.    Plaintiff further submits that Entertainment One had exclusive knowledge of material facts and committed an active concealment through malice and oppression as they did

- 29 -

1 not 'cease-and-desist' as instructed by Plaintiff, then supplied and profited from his property,

2 which are copyright protected assets as they unlawfully took benefit and financially gained from

3 his property using a transfer instrument conducted through an United States entity under the

4 iTunes Agreement. Moreover, royalties that were being paid to Entertainment One U.S. LP an

5 United States entity, were being made up in part from Plaintiff's Film under the iTunes

6 Agreement. Furthermore, Plaintiff submits that Entertainment One were legally obliged to inform

7 Plaintiff that it was distributing his Motion Picture through a United States entity, and

8 intentionally concealed and/or suppressed these facts with intent to defraud Plaintiff, as they

9 concealed profits made from his assets through the concealed transfer instrument.

10   117. *Secondly*, based on information only discovered on February 10, 2020 and

11 between October 8, 2020 and October 12, 2020 in a limited jurisdictional discovery conducted in

12 case no. 4:20-cv-01527-YGR, in or around June 2012 Entertainment One U.S. LP entered a

13 distribution deal in the United States with Google Inc. [LLC] and Google Ireland Limited (the

14 "Google Agreement"). Once again, Entertainment One subsequently distributed Plaintiff's

15 Motion Picture through this deal and have admitted to same. Nonetheless, this was despite being

16 made aware in January/February 2010 that they were acting in violating Plaintiff's contracts,

17 exclusive rights of the author, copyrights and its required metadata, contractual credit obligations,

18 Advertising Restrictions, and refused to "cease-and-desist" as instructed by Plaintiff, whilst

19 fraudulently advertising and marketing the Motion Picture in offensive cultural appropriation and

20 anti-Irish sentiment, as a "Brit flick" whilst using a counterfeit cover.

21   118. Entertainment One intentionally failed to notify or disclose to Plaintiff that they

22 provided and distributed his copyright protected assets through the Google Agreement, and

23 profited from Plaintiff's Film and screenplay without Plaintiff's knowledge or consent whilst

24 using a transfer instrument for a United States entity conducted in the territorial boundaries of the

25 United States, which included the sale or exchange of his copyright protected screenplay and Film

26 for pecuniary gain. This information was only known to Entertainment One, which Plaintiff could

27 not have discovered and only discovered in a limited jurisdictional discovery conducted in case

28 no. 4:20-cv-01527-YGR on October 8, 2020. Plaintiff only received evidence of this transfer

1   instrument on December 22, 2020.

2       119.    Entertainment One U.S. LP and Entertainment One UK Limited intentionally

3   failed to disclose these facts that were known only to them when they provided his property

4   through the Google Agreement, a transfer instrument from a United States entity and that Mark

5   Mahon could not have discovered. Mark Mahon did not know of the concealed facts and only

6   found out some initial information on January 8, 2020 by Simon Osborn; February 10, 2020

7   through Kathlyn Querbin of Google LLC and other concealed facts through the jurisdictional

8   discovery conducted in case no. 4:20-cv-01527-YGR. Further, Entertainment One U.S. LP and

9   Entertainment One UK Limited intended to deceive Mark Mahon by concealing the facts, as they

10  have done since 2012. Had the omitted information been disclosed, Mark Mahon reasonably

11  would have behaved differently and would have pursued a separate action years earlier and would

12  not have had to endure further years of unnecessary racial discrimination, racial harassment,

13  malice, oppression and depriving him of his rights; Accordingly, Mark Mahon was harmed as a

14  result of their actions; and Entertainment One U.S. LP and Entertainment One UK Limited's

15  concealment was a substantial factor in causing Mark Mahon's harm.

16      120.    Plaintiff only got proof from Entertainment One of the aforementioned during a

17  jurisdictional discovery in or around October 8-12, 2020 and December 22, 2020. Entertainment

18  One clearly intended to deceive Plaintiff by concealing these facts for nearly a decade. Plaintiff

19  through his company had also been involved in separate litigation for the previous ten years over

20  the Motion Picture and had the concealed information been disclosed to Plaintiff, he would have

21  behaved differently in how he was trying to get matters resolved. Entertainment One's intentional

22  concealment was also conducted with oppression and malice toward Plaintiff, as they were made

23  directly aware by Plaintiff of facts in 2010 in relation to being in breach of Plaintiff's contract,

24  whilst they knowingly continued to use a counterfeit cover and trailer for his Film with blatant

25  disregard of Plaintiff's rights and he was harmed by them. Moreover, royalties were being paid to

26  Entertainment One U.S. LP in the United States, which is a financial transfer instrument for a

27  United States entity, were being made in part from Plaintiff's Film under the Google Agreement.

28  Entertainment One's concealment of facts it only knew was also a substantial factor in causing

1    Plaintiff's harm.

2        121.    *Thirdly*, in or around June 2012 Entertainment One U.S. LP entered a distribution

3    deal in the United States with Google Inc. [LLC] and Google Ireland Limited as stated in the

4    aforementioned. Once again, Entertainment One subsequently distributed Plaintiff's Motion

5    Picture through this deal and have admitted to same. Nonetheless, this was despite being asked to

6    "cease-and-desist" in January/February 2010 for violating Plaintiff's contracts, rights, contractual

7    credit obligations and Advertising Restrictions.

8        122.    Entertainment One fraudulently advertised, displayed and marketed the Film in

9    offensive cultural appropriation and anti-Irish sentiment in misidentifying an award-winning Irish

10   Film as a "Brit flick" in clear violation of the Screen and Advertising Statement of Restrictions,

11   dated February 4, 2010; in violation of the Berne Convention Implementation Act of 1988 and in

12   violation of an international copyright treaty, the Berne Convention.

13       123.    Based on information only discovered on October 6, 2021 in case no. 4:20-cv-

14   01523-YGR, Entertainment One concealed and intentionally failed to notify or disclose to

15   Plaintiff that Entertainment One had chosen to misidentify Plaintiff's Film as a "Brit flick" and

16   then decided to ignore Plaintiff in flagrant disregard of Plaintiff's rights and heritage; whilst

17   acting with racial discrimination, racial harassment, malice, oppression and depriving Plaintiff of

18   his rights.

19       124.    Entertainment One U.S. LP and Entertainment One UK Limited intentionally

20   failed to disclose the fact that they alone decided to market it as a "Brit flick" and these facts were

21   known only to them and that Mark Mahon could not have discovered. Mark Mahon did not know

22   of this fact which was concealed from him and only found out these facts through discovery

23   conducted in case no. 4:20-cv-01523-YGR on October 6, 2021. Further, Entertainment One U.S.

24   LP and Entertainment One UK Limited intended to deceive Mark Mahon by concealing the facts,

25   as they have done since 2010. Had the omitted information been disclosed, Mark Mahon

26   reasonably would have behaved differently and would have pursued a separate direct action years

27   earlier against Entertainment One and would not have had to endure further years of unnecessary

28   cruelty, racial discrimination, harassment, malice, oppression and intentionally depriving Plaintiff

1   of his rights; Accordingly, Mark Mahon was harmed as a result of their actions; and

2   Entertainment One's concealment was a substantial factor in causing Mark Mahon's harm.

3        125.    Plaintiff only got proof of the aforementioned during discovery from Mainsail in

4   or around October 6, 2021. Entertainment One clearly intended to deceive Plaintiff by concealing

5   these facts for over a decade while publicly and flagrantly disregarding Plaintiff's rights and

6   heritage in a global display of racial discrimination and oppression. Plaintiff had also been

7   involved in separate litigation for over a decade to remedy the obvious wrong and had the

8   concealed information been disclosed to Plaintiff, he would have behaved differently in how he

9   was trying to get these highly offensive matters remedied. Entertainment One's deliberate

10   concealment was also conducted with oppression and malice toward Plaintiff, as they were made

11   directly aware by Plaintiff of facts in 2010 in relation to same, whilst they knowingly continued to

12   highjack an Irish product by branding it as a "Brit[ish] flick" in blatant violation and disregard of

13   Plaintiff's rights, and he was harmed by them. Entertainment One's concealment of facts it only

14   knew was also a substantial factor in causing Plaintiff's harm.

15        126.    Entertainment One had exclusive knowledge of material facts after being advised

16   directly by Plaintiff and committed an active concealment through their contractual arrangements

17   conducted by Entertainment One U.S. LP, in clear violation of Plaintiff's rights and in violation

18   of the Screen and Advertising Statement of Restrictions, which called for the Film to "be referred

19   to, as an Irish film."

20        127.    Plaintiff submits that Entertainment One were obliged to inform Plaintiff that it

21   was them and not Mainsail, who decided to brand it as a "Brit flick" and they intentionally,

22   concealed or suppressed these facts with intent to publicly humiliate Plaintiff, who is an Irish

23   citizen.

24        128.    Plaintiff did not consent to Defendants marketing, publicly displaying or

25   advertising his Film, as a "Brit flick" as seen around the world, which did enormous damage to

26   him personally with his family and friends; in his home country of Ireland and Defendants had no

27   authority to do so, or the tortuous conduct herein.

28        129.    Plaintiff further submits that Entertainment One were obliged to inform Plaintiff

1    that it was distributing his copyright protected screenplay and Motion Picture through an entity in

2    the United States and intentionally concealed or suppressed these facts with intent to defraud

3    Plaintiff.

4          130.    If Plaintiff was made aware of the concealed or suppressed facts, or had the

5    information been disclosed, Plaintiff would have been aware of it and would have immediately

6    issued litigation against Defendants directly years earlier but unfortunately, Plaintiff was forced to

7    endure further years of uncalled for hardship, which took an enormous toll on Plaintiff's life

8    personally, emotionally, philosophically and financially, as well as Plaintiff's family.

9          131.    Plaintiff also submits that Entertainment One acted with willful intent, malice and

10    oppression in seeking to have case no. 4:20-cv-01527-YGR dismissed knowing that it had not

11    conducted itself lawfully and morally in relation to the aforementioned.

12          132.    Plaintiff alleges and the evidence supports that Entertainment One knowingly and

13    intentionally concealed and suppressed facts from Plaintiff for the last decade with intent to

14    racially discriminate, harass and publicly humiliate him. Plaintiff must not have been unaware of

15    the concealed facts, as he would not have acted as he did if he had known the concealed or

16    suppressed facts. Furthermore, Plaintiff was forced to endure additional years of unnecessary

17    hardship and emotional distress through Entertainment One's concealment, suppression of facts,

18    constructive fraud and Plaintiff sustained damage.

19          133.    Defendants also have ethical obligations to be honest, truthful and to conduct their

20    dealings legally and morally. Plaintiff is sure that there may be further examples of concealment,

21    omission, deceit and fraud which have yet to be uncovered and will seek leave from the court to

22    amend his complaint accordingly as they become known.

23          134.    Defendants adopted the conduct, through their officers, directors, managing

24    agents, or supervisory employees. Entertainment One further ratified the conduct by failing to

25    take appropriate prompt remedial action when it was brought to their attention in 2010 that they

26    were in breach of Plaintiff's contract, violating his copyright, violating his rights and acted

27    completely against his wishes.

28          135.    The above-described conduct by Entertainment One constitutes fraud, intentional

1    deceit, concealment, constructive fraud, oppression, malice, conscious indifference and reckless

2    disregard of Plaintiff's rights. Plaintiff, Mark Mahon has been damaged by the actions of

3    Entertainment One, and each of them, are liable individually and collectively.

4        136.    As a result of the above-described conduct by Entertainment One, Plaintiff has

5    been damaged in an amount to be proven at trial and Plaintiff is entitled to damages by the

6    principle of restoration. Plaintiff submits his damages are $8,753,310 for the fraud committed by

7    Defendants.

8        137.    By reason of the concealment, omission and/or constructive fraud, Plaintiff is also

9    entitled to recover Entertainment One's profits to the extent the same are not included as part of

10   Plaintiff's damages, which Plaintiff believes to be in excess of $489,111.66 under the continuing

11   violation doctrine. However, Plaintiff reserves the right to amend this figure as the exact figure

12   cannot be determined at this time but Plaintiff is entitled to recover all of Entertainment One's

13   profits attributable to their willful actions.

14       138.    Plaintiff also respectfully submits that collectively Defendants were aware of their

15   actions and also conspired against Plaintiff in order to fraudulently deprive Plaintiff of his rights,

16   his rights to his property and his wishes.

17       139.    Entertainment One authorized and ratified the wrongful conduct, and acted with

18   concealment, omission, oppression, intent, malice, reckless disregard of Plaintiff's rights which

19   was sustained for over a ten year period and conscious indifference of the consequences to act as

20   alleged herein and intended to cause injury to Plaintiff and did in fact cause injury to Plaintiff and

21   this conduct, as alleged herein, constituted a conscious disregard of Plaintiff's rights and justifies

22   an award of punitive and exemplary damages pursuant to California Civil Code § 3294 of at least

23   $20,000,000 so that it would effectively deter similar conduct in the future.

24       140.    Entertainment One's concealment and omission fraud has caused irreparable harm

25   to Plaintiff, Mark Mahon, for which he has no adequate remedy at law. Unless this Court restrains

26   Entertainment One from their current conduct, the harm will continue to occur in the future.

27   Accordingly, Plaintiff is entitled to preliminary and permanent injunction.

28       ///

**FOURTH CLAIM FOR RELIEF**

**Civil Conspiracy**

**(Against Defendant Entertainment One)**

141.    Plaintiff repeats and re-alleges the averments contained in paragraphs 1 – 140 as though fully set forth herein.

142.    Upon information, belief and proof, that between January 30, 2010 and the present, Entertainment One did knowingly conspire and agree to: (1) commit copyright infringement and/or infringement of right of the author; and (2) fraudulently conceal information from Plaintiff for their own gain and benefit as set forth herein.

143.    In furtherance of said conspiracy and agreement, Entertainment One engaged in fraudulent concealment and omissions of facts, acts of cover-up and statements calculated to do what they wanted to Plaintiff's property for the benefit of Defendants and as set forth in detail in the foregoing paragraphs, which are hereby incorporated herein as though set forth in full.

144.    All of the actions of Defendants set forth in the preceding paragraphs, incorporated herein, were in violation of the Plaintiff's rights and committed in furtherance of the aforementioned conspiracies and agreements. Moreover, each of the aforementioned Defendants lent aid, encouragement and knowingly financed, ratified and adopted the acts of the other. As a proximate result of the wrongful acts herein alleged, Plaintiff has suffered significant damage, which will be determined at trial.

145.    These acts constituted malicious conduct which was carried on by said Entertainment One with willful and conscious disregard for Plaintiff's rights with the intention of causing injury, and was despicable conduct that subjected Plaintiff to a cruel, unjust hardship and oppression of his rights so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against Entertainment One to punish them and deter them and other such persons from committing such wrongful and malicious acts in the future.

///

///

COMPLAINT

**FIFTH CLAIM FOR RELIEF**

**Negligent Infliction of Emotional Distress**

**(Against All Defendants)**

146.    Plaintiff repeats and re-alleges the averments contained in paragraphs 1 – 145 as though fully set forth herein.

147.    When Defendants used Plaintiff's copyright protected Film, Plaintiff was owed a duty of care by Defendants, and each of them, to ensure that Plaintiff was not exposed to foreseeable harm.

148.    Plaintiff only discovered on October 6, 2021 that it was Defendants who were solely responsible for advertising, displaying and marketing his Film as a "Brit flick" since 2010 and 2012, respectively, in violation of Plaintiff's rights; heritage; Advertising Restrictions; copyrights and wishes.

149.    Defendants, and each of them, knew, or should have known, that Plaintiff was being subjected to acts being done against his will as they deprived him of his rights and acted with racial discrimination, harassment and oppression, and that, by failing to exercise due care and diligence to prevent these acts, which included racially harassing and discriminatory course of conduct, could and would cause Plaintiff to suffer serious emotional distress.

150.    Defendants, and each of them, failed to exercise their duty of care to prevent their employees, managers, supervisors and/or officers from racially discriminating, harassing, publicly humiliating and acting oppressively against Plaintiff, whilst depriving him of his rights, his wishes and his Film's national identity for over a decade. Although some of the Defendants individually may have taken some corrective action in 2019, the conduct is still continuing today.

151.    Defendants have also continued with oppressive conduct by seeking to have Plaintiff's legitimate claims against them dismissed from court in order to avoid their own financial, legal and moral obligations to him and accordingly, have continued their oppressive conduct under the continuing violation doctrine.

152.    Defendants have ethical, legal and moral responsibilities to conduct themselves to the highest of standards because of the unique positions they hold in society. Plaintiff alleges that

- 37 -

1    Defendants' treatment of him; blatant disregard of his rights and discriminatory conduct has no

2    place in any civilized society.

3          153.    As a direct and consequential result of Defendants' actions, Plaintiff suffered

4    serious mental and emotional distress, including, but is not limited to, pain, anxiety, public

5    humiliation, anger, shame, embarrassment, frustration, grief, loss, disgrace and fear. Plaintiff

6    alleges Defendants are responsible for the harm he suffered and continues to suffer through them.

7          154.    By reason of the conduct of Defendants as alleged herein, Plaintiff has been forced

8    to prosecute the present action. Plaintiff will also engage the services of counsel once the matter

9    proceeds to trial. Plaintiff is therefore entitled to litigation expenses and to reasonable attorney's

10   fees, once he engages them, including expert witness fees and costs, incurred in bringing this

11   action.

12         155.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

13   oppressively; with the wrongful intention of injuring Plaintiff; with the conscious disregard of the

14   rights and safety of Plaintiff; and with an improper and evil motive amounting to malice. Plaintiff

15   is thus entitled to recover punitive damages from Defendants in an amount according to proof.

16                           **SIXTH CLAIM FOR RELIEF**

17                     **Intentional Infliction of Emotional Distress**

18                              **(Against All Defendants)**

19         156.    Plaintiff repeats and re-alleges the averments contained in paragraphs 1 – 155 as

20   though fully set forth herein.

21         157.    Plaintiff complained to eOne UK to try and resolve the issues but was instructed to

22   stop communicating with them and to direct all communications through another company,

23   Mainsail, who Entertainment One knew Plaintiff was in dispute with.

24         158.    Plaintiff made clear repeatedly that eOne UK were violating his contract, the

25   contract of the Film's leading actor, Michael Madsen and were acting against Plaintiff's wishes.

26         159.    Plaintiff also made clear that their actions were causing him distress, humiliation

27   and suffering, and sought to have the situation corrected and remedied.

28         160.    Nevertheless, Defendants advertised, displayed and marketed his Film as a "Brit

                                    - 38 -

flick" with a counterfeit cover for over a decade. Plaintiff only discovered on October 6, 2021 that it was Defendants who were solely responsible for calling it a "Brit flick". Plaintiff seeks relief on three counts:

161.   *Firstly*, Entertainment One consciously failed to take corrective action, once they were made directly aware of the issues. Entertainment One knew that Plaintiff would continue to suffer extreme emotional distress and harm as a result of their failure to act, which he did, for over a decade under the continuing violation doctrine.

162.   *Secondly*, Entertainment One consciously sought to have case no. 4:20-cv-01527-YGR dismissed from court in the Northern District of California for lack of personal jurisdiction knowing they had not conducted themselves appropriately, legally or morally, and that the court did have jurisdiction over them. However, Entertainment One knew that by taking the course of action they did, Plaintiff would suffer further emotional distress and harm as a result of their actions, which he has.

163.   *Thirdly*, Apple are indemnified by ████████████████████ and equally, Google are indemnified by ████████████████ ████ .

164.   Nonetheless, in related cases that are presently before the court, case no. 4:20-cv-01525-YGR and case no. 4:20-cv-01534-YGR respectively, Apple and Google have continued to defend these cases rigorously, even after Plaintiff informed them that they did not have to accept liability for their actions and that he would settle all claims against them globally; which he further agreed they could jointly do.

165.   The fact that Apple and Google have chosen to prolong an obvious wrong and not make restitution in the related cases, which both Apple and Google are indemnified for, demonstrates a consciousness to intentionally inflict further emotional distress and harm on Plaintiff, as a result of their failure to act in the correct manner, which Plaintiff seeks relief for.

166.   Defendants being companies of the caliber they publicly profess themselves to be, have ethical, legal and moral obligations in operating under the social contract to conduct themselves to the highest of standards. Defendants had benefit from Plaintiff's property whilst

1   acting in violation of his rights, and both Apple and Google are indemnified by 

2   . While Plaintiff acknowledges Defendants' inviolate right to defend themselves, they equally

3   should have the moral compass to make immediate restitution for the indisputable wrongdoing

4   they were part of, and should not be depriving the court of its valuable resources, nor Plaintiff of

5   his rightful restitution. Plaintiff alleges that Defendants ongoing treatment of him is shameful and

6   this despicable conduct has no place in any civilized society.

7       167.    As a direct and consequential result of Defendants' actions, Plaintiff did suffer

8   severe emotional distress to his person. Such harm includes, but is not limited to, pain, anxiety,

9   public humiliation, anger, shame, embarrassment, frustration, grief, loss, disgrace and fear.

10  Plaintiff alleges Defendants are responsible for the harm he suffered and continues to suffer by

11  their ongoing actions.

12      168.    By reason of the conduct of Defendants as alleged herein, Plaintiff has been forced

13  to prosecute the present action. Plaintiff will also engage the services of counsel once the matter

14  proceeds to trial. Plaintiff is therefore entitled to litigation expenses and to reasonable attorney's

15  fees, once he engages them, including expert witness fees and costs, incurred in bringing this

16  action.

17      169.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

18  oppressively; with the wrongful intention of injuring Plaintiff; with the conscious disregard of the

19  rights and safety of Plaintiff; and with an improper and evil motive amounting to malice. Plaintiff

20  is thus entitled to recover punitive damages from Defendants in an amount according to proof.

**PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff prays for relief as follows:

23      170.    For an Order that Defendants be required to pay over Plaintiff the actual damages

24  suffered by Plaintiff as a result of the infringement of right of the author for Plaintiff's copyrights,

25  exclusive rights and all profits of Defendants attributable to the infringement of right of the author

26  of Plaintiff's exclusive rights, and to pay such damages to Plaintiff as to this Court shall appear

27  just and proper within the provisions of the Copyright Act, as set forth in 17 U.S.C. § 504 and

28  pursuant to the Berne Convention Implementation Act of 1988;

171.    For an Order that Defendants interfered with Plaintiff's rights in violation of the Berne Convention Implementation Act of 1988;

172.    For an Order that Defendants interfered with Plaintiff's rights in violation of a global copyright treaty the *Berne Convention for the Protection of Literary and Artistic Works*;

173.    For an Order that Entertainment One be required to pay over Plaintiff the damages suffered by him as a result of their concealment, omission and/or constructive fraud and any profits of Entertainment One attributable to their actions;

174.    For punitive and exemplary damages as alleged herein for the Third Cause of Action, in a sum of not less than $20,000,000, so that it would be sufficient to deter and *make an example* of Entertainment One to deter similar conduct in the future;

175.    For special damages in amounts according to proof, together with prejudgment interest;

176.    For punitive and exemplary damages as alleged herein for the Second, Fourth, Fifth and Sixth Causes of Action in amounts according to proof;

177.    For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law, and any other applicable statute;

178.    For an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 or as otherwise provided by law and any other applicable statute, as Plaintiff will engage the services of counsel once the matter proceeds to trial;

179.    For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

180.    For such other and further relief as the Court deems just and proper.

Dated: November 11, 2021                          Respectfully submitted,


By: _____
Mark Mahon
movieman1000@live.com
Mariners Rest,

COMPLAINT

Mariners View Avenue,
Passage West,
Cork,
Ireland
Tel: + 353 87 742 4444

*Pro Se*

## **DEMAND FOR JURY TRIAL**

Plaintiff Mark Mahon hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

Dated: November 11, 2021                    Respectfully submitted,

By: _____
Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Tel: + 353 87 742 4444

*Pro Se*

- 42 -

COMPLAINT